*FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | )   Case No. 17-27360-E-13 |
| | )   Docket Control No. PGM-1 |
| MARTHA SUAREZ GARCIA, | ) |
| | ) |
|               Debtor. | ) |
| | ) |

**MEMORANDUM OPINION AND DECISION**
**SUSTAINING OBJECTION TO NOTICE OF MORTGAGE PAYMENT CHANGE**

This Objection to Notice of Mortgage Payment Change was presented to the court as one in which the Creditor, Deutsche Bank National Trust Company, as Trustee for the GSAMP Trust 2004-WMCI ("Creditor" or "Deutsche Bank") had increased the monthly escrow payment for taxes and insurance from $362.04 to $515.12, a 42% increase of $153.08. Over a period of the first twelve months Deutsche Bank would receive an additional $1,836.96 over what is computed to be the actual insurance and property taxes to be funded from the escrow payments by Debtor during that period.

As addressed below, the $153.08 increase sought is not for post-petition escrow amounts, but to recoup pre-petition defaults, and accelerate the recoupment to just twelve months, rather than allowing the Debtor to use the full term of the plan (up to sixty months) to cure the pre-petition defaults.

The Objection is sustained and the increase in the monthly escrow payment is disallowed in its entirety. The court does allow an increase of $1.17 a month for the escrow payment based upon the evidence provided of the post-petition property tax and insurance amounts.

**REVIEW OF OBJECTION AND OPPOSITION**

The debtor, Martha Suarez Garcia ("Debtor"), filed this Objection to the Notice of Mortgage

Payment Change ("Notice") filed by Creditor on November 26, 2018.

Debtor states the monthly mortgage payment increased by $151.92, resulting in an increase of $218.22 to the plan payment. Debtor argues that there is no support for the increased payment, which purports to increase the escrow balance to $1,823.06 as a cushion when the escrow balance is $0.00.

Debtor argues further that Creditor is liable for attorney's fees pursuant to California Civil Code § 1717, and requests fees of $1,025.00.

**Creditor's Response**

Creditor filed a Response on April 23, 2019. Dckt. 48. Creditor asserts the escrow shortage amount was included in the Proof of Claim with the Escrow Account Disclosure Statement.

Creditor asserts further that the Notice indicated that the monthly escrow payment was increasing from $362.04 to $515.12 and that the monthly mortgage payment would therefore increase to $1,884.37. Creditor argues the decision to increase the escrow payment was made after Creditor was forced to make a $1,884.25 county tax payment on November 13, 2017.

The adjusted minimum escrow cushion of $726.04 is 1/6 of the disbursements made in the 12-month period. Creditor argues it considered the November 2017 county tax and the following projected 12-month escrow payments. From this calculation, Creditor computed that escrow balance would fall to a negative ($1,096.66). Then, when adding a $726.40 escrow cushion, Creditor computes there being a negative escrow balance of ($1,823.06) to be cured in the next twelve months.

Creditor also argues sufficient documentation was provided; that the Notice was filed in good faith; and that attorney's fees should not be awarded because the Notice is accurate.

**Debtor's Reply**

Debtor filed a Reply on April 30, 2019. Dckt. 49. Debtor asserts Creditor is not disbursing in consistent months, and reiterates there is no need for an equity cushion given there is an escrow balance of $0.00.

Debtor argues the escrow provides for $4,358.40 in escrow payments, ($363.20 x 12), and the required escrow cushion/minimum balance is $4,358.50.

**DISCUSSION AND RULING**

A copy of the Notice of Mortgage Payment Change has been filed as Exhibit A in support of the Objection. Dckt. 46 at 2. This bankruptcy case was filed on November 6, 2017. Creditor's claim at that time was $311,255.45, with a pre-petition arrearage of $69,143.93.

The Notice indicates that, applying monthly payments of only $363.20 to the escrow, there would be a negative balance beginning March 2019 of ($1,096.66), with that negative balance slowly whittled down until December 2019 where there is a projected balance of $295.89. In the month of March 2019, the negative balance is ($1,823.06) when accounting for the minimum cushion of $726.40.

The "required balance projection" in December 2019 is $2,118.95, which is $1,823.06 higher than the projected balance. The increase in the monthly payment of $151.12 over 12 months would increase the escrow ending balance by $1,823.04.

In the details for computing the required escrow monthly payment, Creditor identifies there being three expenses to be paid in 2019:

1. 03/2019 - 2018 2nd Property Tax Installment........$1,876.25
2. 03/2019 - Property Hazard Insurance....................$ 606.00
3. 11/2019 - 2019 1st Property Tax Installment..........$1,876.25

This totals $4,358.50. Divided over twelve payments a year, this equals $363.20.

The existing escrow payment of $362.04 is slightly less, resulting in there being an annual shortfall of ($14.02), which when spread over twelve months is ($1.17) per month.

Creditor's Opposition consists of: (1) a seven page Opposition presenting the arguments and legal authorities by counsel; (2) certificate of service; (3) Exhibit 1 which is a four page declaration by Javier Rivera in this bankruptcy case; (4) Exhibit A attached to Exhibit 1 which is identified as the "POC Escrow Analysis;" and (5) Exhibit 2 which is the declaration of Sean Ferry, Creditor's counsel in this bankruptcy case.

In considering this Opposition, the court first notes that Creditor has chosen to not comply with Local Bankruptcy Rules 9004-1 and 9014-1(c) which require that the opposition, each declaration, the exhibits, and the certificate of service be filed as separate pleadings - not lumped

together into one super thirty-three page electronic document.

In reviewing Mr. Rivera's declaration he provides the court with his personal knowledge testimony (Fed. R. Evid. 602) that includes:

1. The Proof of Claim filed by Ocwen (Proof of Claim No. 7, though Mr. Rivera does not identify it by proof of claim number) is for a total claim of $311,255.45, which includes $69,143.93 in pre-petition arrears.

2. On page four of the Proof of Claim the amount of the monthly payment is stated to be $1,731.29, which consists of $1,369.25 in principal and interest, and $362.04 for escrow.

3. Mr. Rivera then reads from page four of the Proof of Claim to tell the court that the Proof of Claim says that there will be a projected escrow shortage of $1,744.17.

4. Mr. Rivera then continues to read from the Escrow Analysis attached to the Proof of Claim. Telling the court that he reads it to say that the asserted shortage in the escrow is computed by taking into account the total anticipated payments to and from escrow for the following 12-month period, plus a "buffer" of $724.08.

5. Mr. Rivera then states (it appearing by again reading it from the Proof of Claim) that there was an initial escrow balance of $1,744.17 required in December 2017 to ensure that there would be at least the $724.08 cushion.

6. Mr. Rivera then states that Ocwen filed a Notice of Mortgage Payment Change, and then reads from that Notice, telling the court that the monthly escrow payment amount was to be increased from $362.04 to $515.12.

7. Continuing to read from the Proof of Claim and the Escrow Analysis attached thereto, Mr. Rivera reports that Creditor had to pay the County Taxes on the Property in November 2017 (which as shown below was days after this Bankruptcy Case was filed).

8. Mr. Rivera then testifies that the difference in the monthly escrow payment in the Proof of Claim and the increased amount in the Notice of Mortgage Payment Change arises from the $1,884.25 county tax payment that was made in November 2017, shortly after the filing of the bankruptcy case in November 2017.

There is little, if any, actual personal knowledge testimony provided by Mr. Rivera. Rather, his declaration appears to be merely an extended argument by Creditor's counsel.

The Objection portion of the Objection-Certificate of Service-Declarations as Exhibits-Exhibits as Exhibits to Declarations that are Exhibits thirty-three page document repeats much of Mr. Rivera's reading of the Proof of Claim, Escrow Analysis, and Notice of Mortgage Payment Change. Many of the paragraphs look identical to the recitations of the documents by Mr. Rivera

in his declaration.

Proof of Claim No. 7 was signed by Sean Ferry, the attorney for Creditor, as the "Authorized Agent for Secured Creditor." Mr. Ferry signed Proof of Claim No. 7 under penalty of perjury, stating that it is true and correct. Possibly it is Mr. Ferry who has the substantive personal knowledge to provide testimony about the claim and the increase in escrow payment, rather than Mr. Rivera merely reading the documents to the court.

**Arguments at Hearing
and Required Information in Proof of Claim**

At the hearing, Creditor's counsel asserted that the arrearage stated in Proof of Claim No. 7 of $69,143.99 was not computed to state all of the pre-petition defaults in payment, but only the principle and interest, the pre-petition fees, the shortfall in the amount of pre-petition requested escrow payments made for property taxes and insurance, and the amounts spent for the property taxes and insurance. Counsel then explained that the term "Projected escrow shortage" on the Proof of Claim Attachment (page 4 of Proof of Claim No. 7) was merely the lack of escrow cushion that Creditor asserted the right to have in the escrow account - not the shortage in the amount of required monthly payments into escrow.

Thus, counsel argued, that when the 2017 property taxes were paid in November 2017 days after the case was filed, the monies advanced were a post-petition obligation for which they could increase the monthly escrow payment to recapture that amount in one year - as opposed to the five years the Debtor has to cure all pre-petition arrearages under a Chapter 13 plan.

At the hearing, Deutsche Bank counsel further argued this $1,836.95 post-petition increase in the escrow payment was necessary to account for the property tax payment made November 13, 2017, which was a mere 7 days after the bankruptcy case was filed. Deutsche Bank admitted at the hearing that in Proof of Claim No. 7 filed in this case, the pre-petition arrearage stated for payment due prior to the filing of the bankruptcy case did not include the actual pre-petition defaults in payments due for the pre-petition escrow, but only the amounts of pre-petition taxes and insurance advanced (because of the defaults in escrow account payments) and paid by Deutsche Bank pre-petition, and an additional "escrow shortage" for only a surplus for the escrow account to which

5

Deutsche Bank asserts it is entitled.

Deutsche Bank offered the admission that the pre-petition arrearage did not include the actual pre-petition payments that were due but not paid, to address the issue raised in the tentative ruling that it appears Deutsche Bank is attempting to double collect the pre-petition arrearage for the November 2017 tax payment for which Debtor had failed to make the pre-petition escrow payments.

In Proof of Claim No. 7 Deutsche Bank states under penalty of perjury that the total amount necessary to cure any prepetition defaults was $69,143.93. Proof of Claim No. 7, Dckt. 7 at 2. Based on what counsel for Deutsche Bank stated to the court at the hearing, Deutsche Bank knowingly did not include in this amount all of the pre-petition defaults in the required pre-petition escrow payments. Rather, it included only the amounts for which it had already made escrow advances and what it asserted should be an escrow cushion, intentionally excluding all of the actual escrow defaults that had occurred that resulted in there being no monies in the escrow as of the November 6, 2017 filing to make the November 13, 2017 tax payment (which necessarily had to be funded by Debtor from the pre-petition monthly escrow payments).

Federal Rule of Bankruptcy Procedure 3001(c)(2) requires (not merely permits if the creditor elects to so state) that the following information be accurately included as part of a proof of claim when the claim is secured by the debtor's residence (as in this case), stating (emphasis added):

> (c) Supporting information.
>
> (2) Additional **requirements in an individual debtor case**; sanctions for failure to comply. In a case in which the debtor is an individual:
>
>> (A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other **charges incurred before the petition was filed**, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.
>>
>> (B) If a security interest is claimed in the debtor's property, a statement of the **amount necessary to cure any default** as of the date of the petition **shall be filed** with the proof of claim.
>>
>> (C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

> (D) If the **holder of a claim fails to provide any information required by this subdivision (c)**, the court may, after notice and hearing, take either or both of the following actions:
>
>> (i) **preclude the holder from presenting the omitted information, in any form,** as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or
>>
>> (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

As discussed in Collier on Bankruptcy, Sixteenth Edition, ¶ 3001.03 (emphasis added), the required Official Form 410A:

> [2] Content of Attachment A
>
> Attachment A, which is denominated as Official Form 410A, is to be filed by a creditor if the creditor claims a security interest in a chapter 7 or chapter 13 debtor's principal residence. The form was substantially revised by amendments made in 2015, and requires the claimant to provide a loan history for the mortgage account. . . .
> Part 3 **requires a calculation of the amount necessary to cure any prepetition default as of the petition date.** The creditor must provide an itemization of the prepetition arrearage (less any funds held by the creditor) by stating the principal and interest due, prepetition fees due, **escrow deficiency for funds advanced, and projected escrow shortage**. The result of this calculation should be **the total amount needed to cure the entire prepetition arrearage.**

The actual, accurate escrow shortage has to be properly computed for the pre-petition amount, not merely a "projected shortage of an escrow cushion" as Deutsche Bank attempts to do here today. As discussed below, the escrow shortage clearly included the pre-petition escrow payments of $362.04 a month in default for the twelve months prior to the $1,876.25 property tax payment made on November 13, 2017, by Deutsche Bank, a mere seven days after the November 6, 2017 filing of this Bankruptcy Case. The $1,876.25 in the pre-petition escrow shortage created by the pre-petition defaults cannot be transported through time by Deutsche Bank to create fictitious future post-petition defaults in required escrow payments.

In substance, Deutsche Bank manipulated and misstated the pre-petition arrearage to improperly defeat Debtor's right under the Bankruptcy Code to cure that pre-petition default over a period of up to five years through a Chapter 13 plan. Then Deutsche Bank has attempted to increase the post-petition escrow payments, which is to fund the post-petition taxes and insurance for the post-petition period, to force Debtor to cure that portion of the pre-petition over one year

instead of the five years permitted by Congress in the Bankruptcy Code for a Chapter 13 plan.

Creditor's counsel's argument that the pre-petition defaults in making the monthly escrow payments are not part of the pre-petition claim was not persuasive. Debtor has an obligation to make the monthly escrow payments pre-petition. Debtor defaulted in those payments that were due pre-petition. Those defaults, and the escrow payments owing thereon, are part of Creditor's pre-petition claim.

Creditor does not have the luxury, or right, to elect to ignore the pre-petition defaults and then claim them as a post-petition default when they pay the taxes mere days after the bankruptcy case was filed, not having the money in escrow because of Debtor's pre-petition defaults.

**Apparent Double Payment of Arrearage Sought by Creditor**

The "need" to increase the escrow is uniformly stated in the documents due to an arrearage caused by the November 2017 property tax payment, which Creditor had to advance due to Debtor having defaulted in the pre-petition mortgage (principal, interest, escrow). In Proof of Claim No. 7, Creditor has properly demanded that Debtor cure all of those pre-petition arrearages, which totals $69,143.93. This $69,143.93 pre-petition arrearage includes the tax payment to be made in November 2017.

If Deutsche Bank and Ocwen correctly stated the pre-petition arrearage in Proof of Claim No. 7, then they would be seeking to demand that Debtor pay this pre-petition arrearage through the plan, and then Debtor double pay the arrearage by increasing the escrow payment by $151.92 a month, which after 12 months will put in Creditor's (escrow) pocket $1,823.04.

At the hearing Creditor protested the court characterization of the seeking to recover the amounts of the pre-petition defaults in one year as a double collection of the pre-petition default because the Creditor chose not to include the pre-petition defaults in Proof of Claim 7. This was based on characterizing the "Projected escrow shortage" statement for the pre-petition arrearage not to be the actual shortage in payments, but merely the escrow cushion which Creditor states did not exist. Rather than stating the actual pre-petition defaults in payments, Creditor chose to treat the pre-petition defaults as a post-petition default to be cured within one year rather than as part of the pre-petition arrearage cured as permitted by the Bankruptcy Code.

8

1 Intentionally misstating the pre-petition arrearage and then incorrectly increasing the post-petition payment to circumvent the Debtor's right to cure the pre-petition arrearage (which includes all of the pre-petition escrow payments not made) over up to five years in a Chapter 13 plan is little better than trying to obtain double payments.

## RULING

Debtor's Objection is sustained and the proposed increase in the monthly escrow payment to $515.12 is disallowed in its entirety.

Based upon the evidence presented, the court authorizes Creditor to increase the monthly escrow payment to $363.21 a month, for the increase of $1.17 in the projected annual property taxes and insurance as stated in documents presented by both Debtor and Creditor.

The court could take Deutsche Bank's intentional and willful statement under penalty of perjury that pre-petition escrow deficiency for monies actually advanced pre-petition and the projected escrow shortage for the pre-petition defaults was only $69,143.93 was an admission that Deutsche Bank was purposely waiving the additional pre-petition defaults in escrow payments. However, notwithstanding this intentional misstatement of the pre-petition arrearage, it is not unreasonable for the Debtor to actually cure all of the pre-petition defaults, at least without having a further hearing on an alleged waiver of the additional pre-petition amounts.

While sustaining the Objection, and increasing the monthly escrow payment going forward for the escrow expenses to be funded (the insurance, April 2018 property tax payments, and such further payments thereafter), such is without prejudice to Deutsche Bank amending Proof of Claim No. 7 to accurately state the pre-petition arrearage, if Deutsche Bank believes that further amendment is necessary to accurately state such amount. Additionally, this is without prejudice to any rights of the Debtor to oppose any such amendment.

**Prevailing Party**

In the Objection, Debtor asserts the right to recover attorney's fees and costs for having to prosecute this Objection. Debtor states the right to recover attorney's fees as follows:

> Debtor is entitled to attorney's fees by stature [sic], under Ca. Civil Code§ 1717, a reciprocal contractual attorneys' fees statute, Debtor is entitled to reimbursement of attorney's fees as the prevailing party in this matter. Therefore, Debtor requests an

1  award of attorney's fees of $1,025.00, based on the Hourly Billing attached hereto
   as Exhibit #2.

Objection, p. 4:13-16; Dckt. 43.

Debtor does not direct the court to any "contractual" attorney's fees provision. California Civil Code § 1717 does not create a substantive right to attorney's fees, but does provide that if a contract purports to entitle, only one of the parties may recover attorney's fees (such as a promissory note written by a financial institution), then the provision is reciprocal.

Though the requested fees of $1,025.00 does not facially appear to be outrageous or unreasonable, before the court begins an analysis, there must first be a basis shown for the fees. While Debtor may argue, "the court knows that a creditor like this has attorney's fees provisions in its note and deed of trust" or "if the court would just read the note and deed of trust the court could state the basis for Debtor," such advocacy for one party or the other is not the role of the court.

While Debtor's counsel sought to reduce the potential attorney's fees and costs by collapsing down the normal post "judgment" (which includes orders) motion, here Debtor will have to proceed with the normal post judgment motion process as provided in Federal Rule of Civil Procedure 54 and Federal Rules of Bankruptcy Procedure 7054 and 9014.

**Dated:** May 15, 2019

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

10

Filed 05/16/19 — Case 17-27360 — Doc 51

## Instructions to Clerk of Court
**Service List - Not Part of Order/Judgment**

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Theron S. Covey, Esq.<br>Robertson, Anschutz & Schneid<br>7676 Hazard Center Drive, Ste. 500<br>San Diego, CA 92108 | |